*Litchfield,*
June, 1837.

Winchester
*v.*
Hinsdale.

---

### THE STATE *against* ROWLEY and another.

12    101
75    212

A criminal information, filed by a public prosecutor, is not amendable, by adding a new count for the offence already charged, after the statute of limitations has run upon such offence.

*Litchfield,*
June, 1837.

The State
*v.*
Rowley.

The statute of this state, *tit.* 21. *s.* 114. (ed. 1835.) against cheating by false pretences, embraces the provisions of the statutes of 33 *Hen.* 8., 32 *Geo.* 2. and 52 *Geo.* 3.; and the decisions in *Great-Britain* under those statutes are strictly applicable to cases arising here under our own.

Many acts, which if done by an individual, are not indictable, are punishable criminally, when done in pursuance of a conspiracy between two or more persons; and it seems, that an indictment may be sustained, whenever there is a conspiracy for an unlawful purpose, or to effect a lawful purpose, by unlawful means.

Therefore, where an information charged, that *A*, who owned wood worth 200 dollars only, and *B*, who owned lumber worth 100 dollars only, conspired together to cheat and defraud *C* and *D*; and for that purpose, it was agreed between *A* and *B*, that *B* should apply to *C*, and induce him to purchase, in his own name, for *B*, *A's* wood, for 1500 dollars, and that *B* should then refuse to take the wood of *C*, or pay him for it; that *A* should, in like manner, apply to *D*, and induce him to purchase, in his own name, for *A*, *B's* lumber, for 1200 dollars, and that *A* should then refuse to take the lumber of *D*, or pay him for it; that in pursuance of such conspiracy, *A* and *B* induced *C* and *D*, respectively, to make such purchases, *A* and *B* falsely representing, that they wanted to be the owners of such wood and lumber respectively, and promising to take the same of *C* and *D*, and pay them the prices which they were to pay; that *C* and *D* gave to *A* and *B* their promissory notes, for the purchase money; and that *A* and *B* then refused to take the wood and lumber of *C* and *D*, or to indemnify them; and that, by means of such conspiracy and false pretences, *A* and *B* obtained such notes from *C* and *D*; it was held, that these facts constituted an offence within the statute, *tit.* 21. *s.* 114. (ed. 1835.); and the court were strongly inclined to the opinion, that such facts also constituted a misdemeanour at common law.

THIS was an information against *Alpha Rowley* and *Chauncey Baldwin* for a conspiracy to cheat and defraud *Benjamin Tucker*, jun. and *Dudley Case*, filed, by the state's attorney, at the term of the superior court for *Litchfield* county, in *August*, 1836.

The information alleged, That on the 10th of *December*, 1835, *Rowley* was possessed of a tract of land in *Winchester*, on which there was a quantity of wood and timber growing, of the value of 200 dollars, and no more; that *Baldwin*, at the same time, owned and possessed a quantity of lumber and logs, of the value of 100 dollars, and no more; that *Rowley* and *Baldwin*, designing to dispose of such wood and timber and of such lumber and logs at a price greatly above their just value, did, on said 10th of *December*, 1835, at *Barkhamsted*, unlawfully and wickedly conspire and agree together to cheat and defraud all persons whom they could induce to purchase said wood and timber and said lumber and logs, and especially

to cheat and defraud *Tucker* and *Case;* that for this purpose, it was agreed between *Rowley* and *Baldwin*, that *Baldwin* should apply to *Tucker*, and fraudulently induce him to purchase of *Rowley*, his (*Rowley's*) wood and timber, for *Baldwin*, but in the name of *Tucker*, at a price greatly exceeding its just value, *viz.* for the sum of 1500 dollars, and should then refuse to take the wood and timber of *Tucker*, or to pay for it, but should leave it on his hands, to his great loss and to the great profit of *Rowley;* and that *Rowley* should apply to *Case* to go to *Baldwin* and purchase of him said lumber and logs, for *Rowley*, but in the name of *Case*, at a price greatly exceeding their just value, *viz.* at the sum of 1200 dollars, and should then refuse to take them of *Case*, or to pay him for them, but should leave them on his hands, to his great loss and to the great profit of *Baldwin;* that in pursuance of such fraudulent conspiracy, and to carry it into effect, *Baldwin*, on the same day, applied to *Tucker* and requested him to purchase of *Rowley* said wood and timber, at the price of 1500 dollars, and to induce *Tucker* to make such purchase, falsely and fraudulently represented to him, that he (*Baldwin*) wanted to purchase said wood and timber and become the owner thereof, and could, if he owned the same, make great profits thereby; that *Baldwin* then falsely and deceitfully promised *Tucker* to take said wood and timber from him and pay him said sum of 1500 dollars, whereas *Baldwin* did not wish to purchase said wood and timber, and did not intend to take the same or to pay any thing therefor, and well knew, that it was not worth more than 200 dollars; that *Tucker*, being ignorant of the conspiracy, but confiding in the representations and promise of *Baldwin*, did, on said 10th of *December*, purchase said wood and timber of *Rowley*, at the price of 1500 dollars, and gave his promissory note to *Rowley* for that sum; but that *Baldwin*, in pursuance of the conspiracy, has, at all times since, utterly refused to take said wood and timber of *Tucker*, or to pay him for the same, or any part thereof, though thereunto specially requested. There were then similar allegations (*mutatis mutandis*) with regard to the acts of *Rowley* and *Case*. The information concluded thus: " And the said attorney says, that said *Rowley* and *Baldwin*, by means of their fraudulent conspiracy aforesaid, and by their said false pretences, did wilfully defraud and deceive said *Tucker* and *Case*, and did obtain from them their

said notes, in manner aforesaid and for the sums aforesaid, **the** same being of great value, *viz.* of the value of 2700 dollars; all of which doings of said *Rowley* and *Baldwin* were and are against the peace, contrary to the statute in such case made and provided and of evil example," &c.

The cause was continued to the term of the court in *February*, 1837, when the attorney moved, that the information be amended, by adding thereunto a new count in the following words : "And said attorney further says, that said *Alpha Rowley* and said *Chauncey Baldwin* did, with force and arms, at *Barkhampsted*, in *Litchfield* county, on the 10th day of *December,* 1835, unlawfully, fraudulently and deceitfully, conspire, combine, confederate and agree together to cheat and defraud the said *Benjamin Tucker*, jun. and the said *Dudley Case*, of their moneys, to the great damage of the said *Tucker* and *Case*." This motion was opposed, by the defendants. They also demurred to the information ; and by consent of the parties, the question whether the proposed count may be added, according to the motion for that purpose, and the questions arising under the demurrer, were reserved for the advice of this court.

*W. W. Ellsworth* and *T. Smith*, for the defendants, contended, 1. That the information was not amendable, after the statute of limitations had run upon the offence, as it had done in this case. The amendment of an information, by adding a new count, is in effect the filing of a new information. *Goff* q. t. v. *Popplewell* & al. 2 *Term Rep.* 707. *Petre* v. *Craft*, 4 *East*, 433. *Dover* v. *Mestaer*, 4 *East*, 435. In the case of *Rex* v. *Wilkes*, 4 *Burr.* 2527. 2568. an amendment was allowed, on the ground that the denial of it would produce inconvenience and vexation to the defendant, without any benefit. The defence was not at all varied. But the precise point has been decided in this state. *Drake* v. *Watson*, 4 *Day*, 37. 42. This case has not been overruled, by any subsequent decision. *Merriam* v. *Langdon* & al. 10 *Conn. Rep.* 461. 472, 3 was considered, at the time, as "plainly distinguishable" from it.

To amend the information, by adding the proposed count, would be nugatory, as it is void for uncertainty. It does not contain, as it should, a complete description of the facts and

circumstances which constitute the offence. *The King* v. *Mason*, 2 *Term Rep.* 581. *The King* v. *Stevens* & al. 5 *East*, 244. *The King* v. *Gill* & al. 4 *Barn. & Ald.* 204. *The King* v. *Foule*, 4 *Car. & Payne*, 592. (19 *Serg. & Lowb.* 540.) *Lambert* v. *The People*, in error, 9 *Cowen*, 578. 3 *Chitt. Crim. Law*, 999. (*Lond.* ed.)

2. That the facts charged in the original count do not constitute an offence within the provisions of our statute against obtaining goods by false pretences. *Stat.* 146. *tit.* 21. *s.* 114. (ed. 1835.) 2 *Russ.* 1361. 1388. *Regina* v. *Jones*, 1 *Salk.* 379. *Rex* v. *Wheatly*, 2 *Burr.* 1125. 1127. 1129. *Rex* v. *Lara*, 6 *Term Rep.* 565. *The People* v. *Babcock*, 7 *Johns. Rep.* 201. 204. *The People* v. *Miller*, 14 *Johns. Rep.* 371. *Rex* v. *Plestow*, 1 *Campb.* 494. *Young* & al. v. *The King*, in error, 3 *Term Rep.* 98. 102. *Rex* v. *Osborn*, 3 *Burr.* 1697. *Rex* v. *Bower*, *Cowp.* 323. *Rex* v. *Codrington*, 1 *Car. & Payne*, 661. (11 *Serg. & Lowb.* 518.)

3. That the facts charged in the original count do not constitute a conspiracy to defraud, that would be punishable at common law. 2 *Sw. Dig.* 331. *Rex* v. *Wilders*, 2 *Burr.* 1128. cited by *Denison*, J. *Rex* v. *Osborn*, 3 *Burr.* 1697. *Lambert* v. *The People*, in error, 9 *Cowen*, 578. 596. per *Spencer*, Senator. *Rex* v. *Turner*, 13 *East*, 228. 231. *The King* v. *Seward* & al. 1 *Adol. & El.* 706. (28 *Serg. & Lowb.* 185.) *Rex* v. *Pywell* & al. 1 *Stark. Ca.* 402.

*L. Church*, for the prosecution, contended, 1. That the information was amendable. *Merriam* v. *Langdon* & al. 10 *Conn. Rep.* 461. When the court allows the amendment, it will see that the party is not prejudiced. The form of the count proposed to be added, was selected from *Chitty*, because it was the shortest, with no other view than to bring up the question whether an amendment of a criminal information, by a public prosecutor, can be made during any part of the proceeding. But such a count is good. See 3 *Chitt. Crim. Law*, 1145. The amendment, when made, of course relates back to the filing of the information.

2. That the original count was sufficient. If there were pretences made by the defendants; if these pretences were false; and if the defendants were thereby induced to part with their money, without an equivalent; there was an offence with-

*Litchfield, June, 1837.*

The State
*v.*
Rowley.

*Litchfield,*
*June, 1837.*

The State
*v.*
Rowley.

in the statute.    2 *Russell*, 1819, 20.    These ingredients are explicitly alleged in the information.    Besides, here was a *conspiracy ;* and all confederacies wrongfully to prejudice another, are misdemeanours at common law.    *Hawk. P. C. b. 1. c. 72. s. 2.*

BISSELL, J.    At the *August* term, 1836, of the superior court, for *Litchfield* county, the attorney for the state filed an information against the defendants for a conspiracy.    At the *February* term following, and after the statute of limitations had confessedly run upon the offence charged, he moved to add a new count to the information ; and whether he shall be permitted to do this, is the first question reserved for the advice of this court.

That the public prosecutor may amend an information, at any time before trial, is too well settled to admit of dispute ; and, even during trial, it has often been done.    And that he may amend, by adding a new count, is equally indisputable. But whether he may add such count, for the offence already charged, after that offence is barred by the statute of limitations, presents a question, upon which there has not, perhaps, been an entire uniformity of decision.    In many instances, amendments of informations, whether presented by public officers, or *qui tam*, have been permitted, in *England*, after the statute of limitations had run against the offence.    In others, and especially where there appeared to have been an unreasonable delay, they have been refused.

The cases upon this point have been so recently brought together, and so fully considered, in the case of *Merriam* v. *Langdon*, 10 *Conn. Rep.* 462., that it becomes wholly unnecessary to review them here.    In the case cited, the county court permitted material amendments to be made, after the time for filing a new information had elapsed ; and upon a writ of error brought in this court, it was held, that there was nothing erroneous in the proceeding.    It was strongly insisted, in the argument of that case, that the allowance of an amendment, being a mere matter of discretion, like a petition for a new trial, furnished no ground of error.    And in giving the opinion of the court, *Church*, J. remarks : " It is certainly very well settled, at this time, that where the power of permitting amendments is conferred upon courts, the allowance or disal-

lowance of them is a matter of discretion with the court, and therefore, affords no ground for a writ of error." There can be no doubt, but that upon this ground, the decision of the court, in that case, can be entirely vindicated. See the authorities there cited.

The question now comes before us, unfettered by any decision in the court below, and in a case strictly criminal. We are, therefore, at liberty to settle it upon principle. There would, perhaps, be no great danger of oppression in permitting amendments, under the discretion of the court, after the statute had run upon the offence; and in some instances, it would doubtless tend to the furtherance of justice. But it is very apparent, that there would be no settled or well defined rule on the subject. Circumstances, under which courts would be called upon to exercise a discretion, might be varied, by a single shade. Questions would often arise as to whether there had, or had not been, an unreasonable delay; and it is, perhaps, desirable, that, in a criminal prosecution, as little as possible should be left to the discretion of the court. Besides, if a count may be added, a conviction on that count alone, may undoubtedly be had. The consequence is, that if the attorney has an information, upon which he cannot hope for a conviction, he may file a new count, and convict the accused upon that, notwithstanding the offence is barred by the statute. There would, really, seem to be very little difference, in principle, between doing this, and filing a new information; and this, it is admitted, cannot be done.

This view of the question is fully sustained, by the decision of the court, in the case of *Drake* v. *Watson*, 4 *Day* 37. That was an action *qui tam* on the statute to restrain the taking of usury. A motion was made, in the superior court, to amend the declaration, after the time for bringing an action had passed. The motion was overruled; and on motion for a new trial, the decision was affirmed, by this court. It is true, the ruling of the superior court might have been sustained, on the principle already alluded to; but the decision here, does not seem to have proceeded on that ground. The court say, more than one year had elapsed from the time of the supposed offence. The right of recovery on the statute was gone; and the plaintiff was not entitled to amend.

We do not feel disposed to overrule that case, or to question

*Litchfield,*
June, 1837.

The State
*v.*
Rowley.

its authority ; and in conformity to the decision there made, as well as for the reasons that have been given, we are of opinion that the motion before us should be denied.

The other question presented for our consideration, regards the sufficiency of the first count.  If the case there stated is within the statute against obtaining money &c., by false pretences ; or if the facts charged constitute a misdemeanour at common law ; the count is clearly sufficient.

It is denied, that any offence whatever is charged ; and, in the first place, it is said, that upon the facts disclosed in this count, *Tucker* and *Case* have a valid defence to the notes obtained ; or may sue on the promises to them respectively made. Admitting this to be so, the consequence contended for does not follow.  It does not follow, that a criminal prosecution will not lie.  The argument assumes the broad ground, that a criminal proceeding cannot be sustained, if the party injured may obtain redress, by a civil suit.  If, therefore, goods are obtained, by means of a false token or pretence, but under such circumstances, as that an action of trover will lie to recover their value, the case, according to the argument, is neither within the statute, nor a misdemeanour at the common law.  It is undoubtedly true, that neither at common law, nor under the statute, is every false representation, by means of which property is wrongfully obtained, an indictable offence. And it is undoubtedly true, as a general rule, that, at common law, an indictment will not lie, in case of a mere private injury ; and that an offence, to be indictable, must affect the public.  Many of the cases cited by the defendants' counsel, fully sustain this position.

Thus, in the case of *The Queen* v. *Jones*, 1 *Salk.* 379., the defendant came to *A*, pretending that *B* sent him to receive 20*l.*, and received it ; whereas *B* did not send him.  The court say : " It is not indictable, unless he came with false tokens.  We are not to indict one man for making a fool of another.  Let him bring his action."

So also, in the case of *The King* v. *Wheatley*, 2 *Burr.* 1125. it was held, that an indictment would not lie against a brewer, for delivering a less quantity of beer for a greater.

Again, in the case of *The King* v. *Codrington*, 1 *Car. &* *Payne,* 661., it was decided, that, if one professes to sell an interest in property, and receive the purchase money, the

vendee taking the usual covenant of title, and it turns out that the vendor had previously sold his interest in the property, this was not sufficient to support an indictment for obtaining money by false pretences.

So again, in the case of *The King* v. *B. Lara*, 6 *Term Rep.* 565., the defendant obtained the possession of certain lottery tickets, under the pretence that he wanted to purchase them for a valuable consideration, and delivered to the prosecutor a fictitious order, purporting to be a draft upon a banker, for the amount, which he knew he had no authority to draw, and would not be paid ; by means of which he obtained possession of the tickets, and defrauded the prosecutor of the value ; it was held, that an indictment at common law, charging these facts, could not be maintained, inasmuch as it did not charge the defendant with using any false token to accomplish the deceit.

The case of *The King* v. *Seward & al.* 1 *Adol. & Ellis*, 706. has been relied upon, by the defendants' counsel. The only points decided in that case, which have any bearing upon the present, were, that an indictment does not lie for conspiring merely to exonerate one parish from the charge of a pauper, and to throw it on another ; nor for conspiring to cause a male pauper to marry a female pauper, for that purpose ; it not being stated, that the conspiracy was to effect such marriage, by force, threat or fraud, or that it was so effected in pursuance of the conspiracy.

The cases of *The People* v. *Babcock*, 7 *Johns. Rep.* 201. *The People* v. *Miller*, 14 *Johns. Rep.* 371., and *Lambert* v. *The People*, in error, 9 *Cowen*, 578., have been urged upon us, as sustaining the defence.

The first of these cases merely decides, that the obtaining of a receipt, upon a judgment, under the false pretence that the defendant was about to pay it, is not an indictable offence.

In *The People* v. *Miller*, the defendant got possession of a promissory note, under the pretence, that he wished to look at it, and then carried it away, and refused to return it to the holder ; this was held to be a mere private fraud, and not punishable criminally.

In the case of *Lambert* v. *The People*, the reversal of the judgment of the supreme court rested chiefly on the ground that *the means* by which the objects of the conspiracy were to be effected, were not sufficiently set forth in the indictment.

*Litchfield,*
*June, 1837.*

The State
*v.*
Rowley.

And when it is considered, that the unanimous opinion of the supreme court, was reversed, by the casting vote of the presiding officer in the court of errors, this case can hardly be relied upon, as an authority.

It should here be remarked, that every case cited, is the case of an indictment at common law. And it is perhaps correct to say, that at common law, no mere fraud, not amounting to a felony, is an indictable offence, unless it affects the public. But the common law having been found inadequate to the punishment of many cases of highly injurious fraud, the stat. 33 *Hen.* 8. was enacted; which makes it an indictable offence to obtain money, goods, jewels or other things, of any other person, by colour or means of *any false token,* or counterfeit letter, made in any other man's name. It was holden, that this statute did not apply to any verbal representations; and to supply this defect, the stat. 30 *Geo.* 2. was passed, by which it is provided, that all persons, who knowingly and designedly, *by any false pretence or pretences,* shall obtain from any person or persons, money, goods, wares or merchandise, with intent to cheat or defraud any person or persons of the same, shall be deemed offenders, &c. The stat. 52 *Geo.* 3. extends the provisions of the former acts to bonds, bills of exchange, bank notes, all securities and orders for the payment of money or the transfer of goods, or any valuable thing whatsoever.

It would seem to have been the object of its framers, to incorporate into our statute, all the provisions of these several acts of *Parliament.* Its terms are exceeding general. It embraces all false tokens, *pretences and devises whatsoever,* employed with an intent to cheat or defraud; and extends to money, goods, chattels and every valuable thing.

It will, therefore, be readily seen, that the decisions, which have been had in *Great-Britain* under these statutes, are strictly applicable, and have a direct bearing on the question, whether the case before us is within our own statute.

It is remarked, by Lord *Kenyon,* in relation to the 30 *Geo.* 2. that when it passed, it was considered to extend to every case, where a party had obtained money, by falsely representing himself to be in a situation in which he was not, or any occurrence which had not happened, to which persons of ordinary caution might give credit. 3 *Term Rep.* 102.

*Litchfield,*
June, 1837.

The State
*v.*
Rowley.

So also it is said, that the term *false pretences,* used in this act, is very general, and includes every extortion of money or goods, with an intent to defraud. 3 *Chitt. Crim. Law,* 997. Accordingly, it has been decided, on an indictment under this act, that if a carrier obtains money, by falsely pretending to have delivered goods, and to have lost the receipt given him, by the person to whom they were directed, he may be indicted for the statutable offence. *The King* v. *Aiery,* 2 *East,* 30.

Again; it has been holden, that if a person procure **a** tradesman to sell him goods, as for ready money, direct him to send his servant with them to his lodgings, and then deliver fabricated bills in payment, retaining the goods, he may be found guilty of obtaining them by false pretences. 2 *Leach* 614. 3 *Chitt. Crim. Law,* 998.

In the case of *Young* & al. v. *The King,* in error, 3 *Term Rep.* 98. money had been obtained, under the false pretence that a bet had been laid, that a pedestrian feat would be performed in a given time. This was held to be an indictable offence, within the 30 *Geo.* 2.; and that it was no objection that the offence consisted in a representation, as of some transaction to take place at a future time. And in pronouncing his opinion, in that case, Lord *Kenyon* remarks: " The defendants, morally speaking, have been guilty of an offence. I admit there are some irregularities, which are not the subject of criminal law. But when the criminal law happens to be auxiliary to the law of morality, I do not feel any inclination to explain it away. Now, this offence is within the words of the act; for the defendants have, by false pretences, fraudulently contrived to obtain money from the prosecutor; and I see no reason why it should not be held to be within the meaning of the statute."

It is certainly difficult to see why this case, if it is to be regarded as an authority, does not govern the case now before us. Indeed, the case would seem to be stronger than any of those which have been cited: for here, not only were the notes obtained, by means of false pretences, but these pretences were put forward in pursuance of a conspiracy between the defendants, to cheat and defraud.

That the facts set forth in the information are within the *words* of the statute, is too clear to admit of argument. That they constitute an offence against the laws of morality, is

*Litchfield,*
*June,* 1837.

The State
*v.*
Rowley.

equally indisputable ; and we are unable to discover any rea-
son, founded either in principle or authority, why they should
not be held to be within the meaning of the act.

This view of the case renders it unnecessary for us to ex-
press a decided opinion on the question whether the facts
charged in the information constitute a misdemeanour at the
common law.    But we are strongly inclined to the opinion that
they do.    The argument has proceeded throughout upon the
ground that the false representations of one of these defendants
are to be regarded as entirely independent of, and disconnected
with, the false representations of the other ; and that, so con-
sidered, the charge, in regard to each, is only, that he made a
statement which was not strictly true, and a promise which was
insincere.    This is not a correct view of the case.    It is, in-
deed, taking out the very vitals of the information.    The gist
of the offence charged is the *unlawful conspiracy*—a conspi-
racy to cheat and defraud.    The terms of this conspiracy, its
objects, and the means by which those objects were to be ac-
complished, are particularly specified ; and every act done, is
averred to have been done in pursuance of the corrupt combi-
nation.

Now, that many acts, which, if done by an individual, are
not indictable, are punished criminally, when done in pursu-
ance of a conspiracy among numbers, is too well settled to ad-
mit of controversy.    Thus, a conspiracy to slander a man, by
charging him with a crime, or with being the father of a bas-
tard child, is an indictable offence.    *Child* v. *North*, 1 *Sid.*
68.    *The Queen* v. *Best*, 1 *Stra.* 193.    *The King* v. *Par-
sons*, 2 *Ld. Raym.* 1168.    Conspiracies among journeymen
to raise their wages, and many other instances which might be
put, stand on the same ground.

There can be no doubt, says *Hawkins*, but that all confede-
racies whatsoever, wrongfully to prejudice a third person, are
highly criminal at common law.    *Hawk. P. C. lib.* 1. *c.*
72. *s.* 2.

In the case of *Rex* v. *Wheatley*, 2 *Burr.* 1125. already ci-
ted, Lord *Mansfield* concedes, that if there be a conspiracy to
cheat, an indictment will lie ; " for (says he) ordinary care and
caution is no guard against this."    And in the same case, Mr.
Justice *Denison* says, " Here are no false weights, nor false
measures, nor any false token at all, *nor any conspiracy.*"

And so again, in the case of *The King* v. *Mawbey* & al. 6 *Term Rep.* 536. *Grose*, J. remarks : " In many cases, an agreement to do a certain thing has been considered as the subject of an indictment for a conspiracy, though the same act, if done separately by each individual, without any agreement among themselves, would not have been illegal."

It is not, perhaps, in view of the authorities, unsafe to lay down the position, that an indictment may be sustained, wherever there is a conspiracy for an unlawful purpose, or to effect a lawful purpose, by unlawful means. Per *Denman*, C. J. in the case of *The King* v. *Seward* & al. already cited. 2 *Russell*, 1819, 20.

It is unnecessary to pursue this enquiry further, as we are of opinion, that the case falls clearly within the statute ; and on that ground the count must be sustained.

In this opinion the other Judges concurred.

Demurrer overruled.