UNITED STATES v. RINTELEN et al.

(District Court, S. D. New York. June 29, 1916.)

No. 8-295.

1. MONOPOLIES ⬦⟾29—CONSPIRACIES—OFFENSES.

Under Sherman Act July 2, 1890, c. 647, § 1, 26 Stat. 209 (Comp. St. 1913, § 8820), declaring that every conspiracy in restraint of trade or commerce among the several states or with foreign nations is illegal, defendants, who conspired to restrain trade between the United States and foreign nations, are guilty, though no overt acts were committed; such conspiracy being governed by the rules applicable to common-law conspiracy, which made the unlawful conspiring the gist of the offense.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 19; Dec. Dig. ⬦⟾29.

For other definitions, see Words and Phrases, First and Second Series, Conspiracy.]

2. CONSPIRACY ⬦⟾27—OFFENSES—OVERT ACT.

The common-law offense of conspiracy is completed when the unlawful conspiracy is completed, and proof of overt acts is unnecessary.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 38, 39; Dec. Dig. ⬦⟾27.]

3. INDICTMENT AND INFORMATION ⬦⟾1—PURPOSE OF INDICTMENT.

The object of an indictment is, first, to furnish accused with a description of the charge against him which will enable him to make his defense, and to avail himself of his conviction or acquittal for protection against a further prosecution for the same charge, as well as to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 1–3; Dec. Dig. ⬦⟾1.]

4. MONOPOLIES ⬦⟾31—OFFENSE—CONSPIRACY—INDICTMENT—SUFFICIENCY.

An indictment charging that defendants, in violation of Sherman Act, § 1, making illegal every conspiracy in restraint of trade or commerce among the several states or with foreign nations, conspired to interfere with commerce between American manufacturers of war munitions, who were too numerous to be named, and the countries of Great Britain, France, Russia, and Italy, by organizing strikes, fomenting labor troubles, and by other means hindering the production of such munitions, as well as their transportation, is sufficient to charge an offense apprising the conspirators of the charge against them and of the means by which they intended to carry out their conspiracy.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 20; Dec. Dig. ⬦⟾31.]

5. CONSPIRACY ⬦⟾26—OFFENSES—DEFENSES.

A combination to effect an unlawful object through lawful means may constitute a criminal conspiracy.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 37; Dec. Dig. ⬦⟾26.]

⬦⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. INDICTMENT AND INFORMATION ☞163—VALIDITY—BILL OF PARTICULARS.

    A bill of particulars cannot aid an indictment which lacks a statement of the essential facts to constitute the offense charged, but is appropriate where there is a good indictment, and defendants desire to be more particularly informed as to matters which will aid them in their defense.

    [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 525; Dec. Dig. ☞163.]

Franz Rintelen and others were indicted for a conspiracy in violation of the Sherman Act. On motion to quash by defendants Monnett and Taylor. Motion overruled. ·

John Lord O'Brian, of Buffalo, N. Y., and Isaac R. Oeland, of New York City, Sp. Asst. Attys. Gen., for the United States.

Pugh & Pugh, of Columbus, Ohio, for defendant Monnett.

WOLVERTON, District Judge. The defendants are indicted for a conspiracy in violation of the first section of what is commonly known as the Sherman Act. It is declared by that section that every conspiracy in· restraint of trade or commerce among the several states or with foreign nations is illegal. The sufficiency of the indictment is brought to test by a motion to quash on the part of the defendant Frank S. Monnett, in which Jacob C. Taylor joins. At the argument I was inclined to the opinion that the motion to quash was well taken, in view of the Cruikshank Case and others holding to the same doctrine. Upon a careful examination of the authorities, however, I have arrived at the conclusion that the indictment is sufficient. I will proceed to state my reasons therefor.

[1, 2] This is·not an indictment under section 37 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1096 [Comp. St. 1913, § 10201]), and it is not necessary that it set out that one or more of the parties have done any act to effect the object of the conspiracy. Nash v. United States, 229 U. S. 373, 378, 33 Sup. Ct. 780, 57 L. Ed. 1232. The sufficiency of the indictment is to be measured more nearly by the sufficiency of an indictment for the common-law offense of conspiracy. Under the common law the conspiring together is the offense, and on proof thereof a conviction is warranted. 8 Cyc. 624.

    "An indictment may be sustained, wherever there is a conspiracy for an unlawful purpose, or to effect a lawful purpose, by unlawful means." State v. Rowley, 12 Conn. 101, 112.

As said in Commonwealth v. Waterman, 122 Mass. 43, 57:

    "It is the combination of two or more to do something unlawful, either as a means or as an ultimate end, which constitutes the crime; and many acts not punishable by indictment have been held to come within this definition. It is said to be sufficient if the end proposed, or the means to be employed, are by reason of the power of the combination, particularly dangerous to the public interests, or particularly injurious to some individual, although not criminal."

I call attention to the fact that the statute is especially calculated to protect the public interests, while it may be true that it does protect private interests as well.

[3, 4] The indictment in the present case is drawn with reference to the ultimate end to be effected by the conspiracy, namely, the reconstraint of trade or commerce between this and foreign nations, while it attempts at least to set out the means by which the object was to be attained. By way of inducement, so styled, it is alleged:

That a large number of individuals, copartnerships, and corporations called "manufacturers" were engaged in various states of the United States in the manufacture of munitions of war, military and naval stores, including rifles, cannon, and other weapons of war, also locomotives, cars, automobiles, aeroplanes, and the like, and railroad materials and other articles of many kinds, all of which were of a character adapted for use in war on land or at sea; that said articles were manufactured for the sole purpose of sale and shipment in trade and commerce with ·Great Britain, France, Russia, and Italy, and other foreign nations; that the manufacturers were engaged in the business of delivering and shipping said articles to persons, corporations, and organized bodies of men, from the state in which they were so manufactured, to and through the port of New York, and other ports of the United States, to foreign countries; that divers persons, corporations, and organized bodies of men other than said manufacturers were also engaged in so delivering, shipping, and transporting such articles from states of the United States to said foreign countries; that said manufacturers, etc., so engaged in foreign trade and commerce, employed large numbers of men, both in the producing and in the manufacturing of said articles, and in selling, shipping, and transporting them, in foreign trade and commerce, and said articles were continuously moved therein; that said articles, when it was necessary, were continuously moved from one state of the United States to other states; "that all of the names and localities of said manufacturers and said other parties so engaged in foreign trade and commerce as aforesaid, and the times, amounts, and routes of such shipments and transportations, are not known to the grand jurors aforesaid, and are so numerous as to preclude their enumeration in this indictment."

It is then further alleged:

"That Franz Rintelen, alias Fred Hansen, alias Miller, alias Muller, alias Edward V. Gasche, alias Edward V. Gates, David Lamar, alias Lanauer, alias David H. Lewis, Frank Buchanan, Jacob C. Taylor, H. Robert Fowler, Frank S. Monnett, Herman Schulteis, and Henry B. Martin, hereinafter called the 'defendants,' and divers other persons whose names are to the grand jurors unknown, each of whom well knew the facts as to said foreign commerce hereinbefore stated and alleged, at and within the said Southern district of New York and within the jurisdiction of this court, unlawfully did knowingly and willfully engage in a conspiracy to restrain the aforesaid foreign trade and commerce, and to restrain, hinder, and prevent the transportation of said articles in said foreign trade and commerce, so far as, and at such times, places, and as to such of said articles, and in such ways as they might thereafter be able so to do, and to restrain, prevent, and hinder the producing or manufacture of said articles for the sole purpose of restraining, preventing, and hindering the shipment and transporting in foreign trade and commerce of such of said articles and in such ways and at such times and places as they might be able so to do; that the purpose and object of said conspiracy was not confined to any particular articles, times, places, ways, and means, but the said defendants conspired and intended, at any time or place, and by any ways or means (some of which were not definitely determined upon by said defendants), to restrain, prevent, and hinder such shipments in foreign trade and commerce; and the particular articles, times, places, ways, and means determined upon by said defendants are not known to the grand jurors aforesaid."

The indictment then sets out the alleged means to be employed to effect the objects of the conspiracy. Now, here are set out the conditions existing with especial fullness, all leading up to the engaging

in foreign trade and commerce, a matter affecting the public in general, and then it is alleged that the purpose of the conspiracy was to restrain, prevent, and hinder such shipments in foreign trade and commerce.

It is laid down in United States v. Cruikshank et al., 92 U. S. 542, 558, 23 L. Ed. 588, that:

"The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances."

It is sufficient to say that this general rule has been many times reasserted and reaffirmed by the Supreme Court. The Cruikshank Case was on an indictment based upon the alleged restraint of private rights, not public, and was preferred under a statute which provided for the punishment of such as conspired to "injure, oppress, threaten, or intimidate any citizen, with intent to prevent or hinder his free exercise and enjoyment of any right or privilege granted or secured to him by the Constitution or laws of the United States." The counts in the indictment to which the particular objections were directed charged, in substance, that the intent was to hinder and prevent the complaining citizens in the free exercise and enjoyment of "every, each, all, and singular" the rights granted them by the Constitution. "So here," the court said in passing upon the indictment, "the crime is made to consist in the unlawful combination with an intent to prevent the enjoyment of any right granted or secured by the Constitution, etc. All rights are not so granted or secured." The court held, therefore, that the indictment was not sufficiently specific, in that it failed to specify what particular right granted by the Constitution had been overridden by the alleged conspirators.

Not so here. The defendants are informed that many persons, corporations, etc., throughout the United States are engaged in the manufacture of the different articles and supplies mentioned, and with those articles were engaging in foreign trade and commerce, and that to hinder and restrain such trade and commerce was the particular purpose and object of the alleged conspiracy. Is this indictment sufficient?

The chief element in a common-law conspiracy is the meeting of the minds of two or more or several persons to effect or accomplish an unlawful purpose, or a lawful purpose through unlawful means, or, as suggested by Mr. Justice Holmes in United States v. Kissel, 218 U. S. 601, 31 Sup. Ct. 124, 54 L. Ed. 1168, under the Sherman Act, it is in essence nothing more than a partnership in criminal purposes. Or, as said in Nash v. United States, supra:

"The Sherman Act punishes the conspiracies at which it is aimed on the common-law footing—that is to say, it does not make the doing of any act other than the act of conspiring a condition of liability."

It was held in the case of Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, though the indictment was preferred under section 37 of the Criminal Code, wherein it was charged that the conspiracy was entered into for the purpose of committing the offense of subornation of perjury, that it was not essential that in the minds of the conspirators the precise persons to be suborned, or the time and place of such suborning should have been agreed upon, as the criminality of the conspiracy charged consisted in the unlawful agreement to accomplish the unlawful purpose.

So in an earlier case, Dealy v. United States, 152 U. S. 539, 543, 14 Sup. Ct. 680, 682 [38 L. Ed. 545], where the indictment charges a conspiracy to defraud the government of large tracts of public lands, it was held not essential to set out by description the specific tracts of lands which it was sought to appropriate; the court saying:

"But manifestly the description in the indictment does not need to be any more definite and precise than the proof of the crime. In other words, if certain facts make out the crime, it is sufficient to charge those facts, and it is obviously unnecessary to state that which is not essential."

Summarized, it is the law on this subject that:

"Certainty to a common intent sufficient to identify the offense which the defendants conspired to commit is all that is required. When the allegation in the indictment advises the defendants fairly what act is charged as the crime which was agreed to be committed, the chief purpose of pleading is attained. Enough is then set forth to apprise the defendants so that they may make a defense." United States v. Stevens (D. C.) 44 Fed. 132, 141.

See, also, Ching v. United States, 118 Fed. 538, 540, 55 C. C. A. 304; Thomas v. United States, 156 Fed. 897, 907, 84 C. C. A. 477, 17 L. R. A. (N. S.) 720.

The purpose of the indictment in the present case is not to charge the commission of an offense against the United States, as might be done under section 37, but to charge a conspiracy in violation of the first section of the Sherman Act, namely, a conspiracy in restraint of trade and commerce with foreign nations; the very gist of the offense being the conspiracy. When the conspiracy is once entered into, as under the common law, the offense is complete. The conspiracy does not go to the restraint in trade of any particular individual or corporation, or combination of men, but to the restraint of all foreign trade where munitions of war are the subject of commerce. So what more could be essential, when the defendants are informed that many persons, corporations, and combinations of men are engaged in the manufacture of such articles constituting munitions of war, and are also engaged in transporting the same in foreign trade and commerce, the alleged purpose and object of the conspiracy being in restraint of such trade and commerce? Can it be said that the defendants are not informed of the nature and cause of the accusation?

Even in the Cruikshank Case, we must assume that the indictment would have been sufficient if it had specified the particular right that had been infringed. Here there is ample description of the foreign trade and commerce being restrained, namely, that consisting of the transportation of munitions of war, manufactured by divers and

sundry manufacturers in the United States especially for exportation to foreign countries. There are no other particulars pertinent to descend to. It is surely not designed that the name of every manufacturer even known to the grand jury, that the articles produced by such manufacturers, that the railways and ships and all routes of transportation, including the names of all the consignees, shall be set forth in the indictment, or even that any of these things be particularized, for the defendants are informed of the nature of the offense without that. "The true test is," says the court in Cochran and Sayre v. United States, 157 U. S. 286, 290, 15 Sup. Ct. 628, 630 [39 L. Ed. 704], "not whether it [the indictment] might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." Without extending the discussion further, I cite the cases of United States v. Patten, 226 U. S. 525, 33 Sup. Ct. 141, 57 L. Ed. 333, 44 L. R. A. (N. S.) 325, and Nash v. United States, supra, in support of the present indictment. The indictments there seem to have been drafted upon the same theory as the one in question, and have been sustained by the Supreme Court.

Now, beyond what has been here said, the indictment specifies the means, or some of them, by which the objects of the conspiracy were intended to be accomplished, namely, by instigating and causing strikes and walkouts among the workmen employed at the plants and factories of the aforesaid manufacturers, so as to prevent and hinder the aforesaid manufacture; by instigating and causing strikes and walkouts among workmen and employés of said persons, partnerships, corporations, and organized bodies of men other than said manufacturers, engaged in foreign trade and commerce as aforesaid, employed in the shipping and transporting of said articles; by inducing by solicitation, persuasion, and exhortation, through the preparation, sending, mailing, and distributing of circulars, pamphlets, etc., the aforesaid workmen to quit the employment of the aforesaid manufacturers, and thereby to restrain, hinder, and prevent, in whole or in part, the operation of said plants; by the same method to cause the aforesaid workmen to leave the employ of the aforesaid persons, partnerships, etc., other than said manufacturers, engaged in said foreign trade and commerce as aforesaid, for the purpose of restraining, hindering, and preventing, in whole or in part, the shipping and transportation of said articles in the aforesaid foreign trade and commerce; by bribing and distributing money among divers officers and persons in charge and control of various labor organizations, to induce them to cause the members of said organizations who might be employed by said manufacturers, or by the said other persons, etc., engaged in foreign trade and commerce as aforesaid, to leave their employment, and to bring about strikes and walkouts among the members of said organizations, and thereby to restrain, prevent, and hinder, in whole or in part, the producing and manufacture, and the expected shipping and trans-

portation in said foreign trade and commerce, of said articles; and by divers other means and methods not specifically determined upon by said defendants, but to be decided upon by them as occasion might arise, all calculated in furtherance of and to effect the object of said conspiracy. With these supporting the paper, my convictions are that it is sufficient.

[5] It is suggested that some of the alleged means employed or to be employed are sanctioned as lawful by the Clayton Act. But this does not help the defendants, as a combination to effect an unlawful object through lawful means may constitute a conspiracy, nevertheless.

[6] I am aware that a bill of particulars cannot aid an indictment which lacks the statement of essential facts to constitute the offense sought to be charged. Such a bill is, however, appropriate where there is a good indictment, and if the defendants desire to be more particularly informed as to matters that will aid them in their defense, it is their privilege to make application to the court for such relief. But, this aside, I think the defendants' rights for defense are adequately subserved by the indictment.

Some criticism is made that the indictment contains certain inconsistencies. I have examined the criticism in this respect, and am not impressed that it is well founded.

The motion to quash will be overruled.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes