*240 MEMORANDUM
LETTS, J.
In this suit the plaintiff, a manufacture of iron and steel products in New Jersey, seeks to enjoin the defendants from putting into effect the provisions of Executive Order No. 6646, promulgated by the President of the United States on March 14, 1934. That order requires that all bidders on work or supplies for any agency of the United States, or for any state, municipal corporation, local subdivision, person, or corporation whose projects are to be carried out in whole, or in part, with funds loaned, or granted, by any agency of the United States, should accompany such bids with a certificate executed by the bidder stating that the bidder is either complying and will continue to comply with the code of fair competition to which he is subject, or, where not subject to *241 any particular code, that he is complying and will continue to comply with the President’s re-employment agreement. The order further forbids the consideration of any bid not accompanied by the certificate hereinbefore described.
The bill of complaint describes the business of the plaintiff and states in Paragraph 28 that the plaintiff “has never signed nor has it agreed to any code, or codes, of fair competition, nor has it signed nor has it agreed to the President’s re-employment agreement.” As a result of the non-compliance thus stated, the plaintiff alleges that it has been prevented from bidding, on Government work and on work of the Highway Department of the State of New Jersey to be carried out wholly, or in part, with funds loaned, or granted, by an agency of the United States to said department. In Paragraph. 24 of the bill of complaint, it is alleged on information and belief that had it been permitted to bid it would have sold to the Highway Department of the State of New Jersey, since March 14, 1934, materials in excess of 1,500 tons. The bill of complaint' then proceeds to attack the constitutionality of said Executive Order No. 6646, the constitutionality of Title I of the National Industrial Recovery Act and the constitutionality of the Codes of Fair Competition for the Iron and Steel Industry, and for the Re-enforcing Materials Fabricating Industry, to which codes it would be subject did it see fit to comply with the National Industrial Recovery Act.
Several questions of law are presented to the Court by the motion of the defendants to dismiss plaintiff’s bill. The grounds as stated in the motion are:
1. That the suit is in reality a suit against the United States and that the United States has not consented to be sued.
2. That the facts alleged in the bill of complaint are not sufficient to constitute a cause of action since:
(a) No immediate and irreparable injury to the plaintiff is shown.
*242 (b) No legal right of the plaintiff is alleged to have been invaded.
Consideration of this motion must be had in relation to plaintiff’s theory and the allegations of his bill which are said to support the theory. Plaintiff denies that the defendants have any authority in law to do the acts sought to be enjoined. Plaintiff claims that Title I of the National Industrial Recovery Act is unconstitutional and void: that the Codes are unconstitutional and void: that the Executive Order No. 6646 is unconstitutional and void and that the threatened acts of the defendants have no authorization from the terms of the National Industrial Recovery Act. The basis of plaintiff’s complaint is that the defendants’ threatened actions are unlawful and being unauthorized are not the acts of the United States. Plaintiff seeks to restrain what he regards as illegal actions threatened to be done by the defendants under the color of office.
Adopting plaintiff’s interpretation of his bill I hold that the suit is not one against the United States. Philadelphia Co. v. Stimson, 223 U. S. 605. In case of an injury threatened by his illegal action an officer cannot claim immunity from injunction process. The principle has frequently been applied with respect to state officers seeking to enforce unconstitutional enactments. Osborn v. Bank of United States, 9 Wheat. 738, 843, 868; Davis v. Gray, 16 Wall. 203; Pennoyer v. McConnaughy, 140 U. S. 1, 10; Scott v. Donald, 165 U. S. 107, 112; Smyth v. Ames, 169 U. S. 466; Ex parte Young, 209 U. S. 123, 159, 160; Ludwig v. Western Union Telegraph Co., 216 U. S. 146; Herndon v. C. R. I. & P. Ry. Co., 218 U. S. 135, 155; Hopkins v. Clemson College, 221 U. S. 636, 643-645. And it is equally applicable to a Federal officer acting in excess of his authority or under an authority not validly conferred. Noble v. Union River Logging R. R. Co., 147 U. S. 165, 171, 172; School of Magnetic Healing v. McAnnulty, 187 U. S. 94.
In the second ground of their motion defendants say *243 that plaintiff’s bill of complaint does not show facts sufficient to constitute a cause of action. They say that there is no allegation of immediate and irreparable injury. The writ of injunction is a remedy of a Court of Equity which is granted only when it appears that the plaintiff is threatened with great, immediate and irreparable injury for which no adequate remedy at law exists. In the light most favorable to the plaintiff the allegations go no further than to state that plaintiff might have bid on contracts either for government work, or for work to be paid for in whole, or in part, with government funds and that it might have been awarded the contract or contracts in question. There is no allegation to the effect that, if these conjectural happenings had transpired and an award of a contract, or contracts had been made to the plaintiff, it would have profited by the fulfillment thereof. In this respect the bill is much weaker than the bill before this Court in the case of the Northwest Motor Co. v. Wallace, decided May 25, 1934. There the plaintiff had been the lowest, responsible bidder, had furnished a certificate of compliance for itself and presumably stood to profit largely had the contract been awarded to it. No such situation is here shown in the bill. The injury or threat of injury to this plaintiff is conjectural and speculative and the threatened wrong is an imaginary one. As said by the Supreme Court in Cline v. Frink Dairy Co., 274 U. S. 445, the danger of irreparable loss must be both “great and immediate” in order to justify the granting of a preliminary injunction. The principle is fundamental and must control the Court in this decision unless a further consideration of plaintiff’s bill reveals a theory which calls for the application of other rules or principles of equity.
Plaintiff describes a market for his product: such market being various agencies of the-United States, the state of New Jersey, municipal corporations within that state, and local subdivisions, persons and corporations in connection with projects *244 carried out or to be carried out within such state wholly or in part with funds loaned or granted by an agency of the United States. Plaintiff says that such market still exists and will continue to exist but that it is excluded from such market by the acts and threatened acts of the defendants.
In the bill plaintiff says that Executive Order No. 6646 of March 14,1934 was signed and promulgated with the intent and for the purpose of effectuating an illegal boycott against plaintiff, among others similarly situated, to the end that by preventing plaintiff from bidding and from selling directly or indirectly to any agencies of the United States, to any state, municipal corporation, local subdivisions, to any person or to any corporation, plaintiff, among others similarly situated, be coerced and compelled to comply then and thereafter with certain supposed codes designated as Codes of Fair Competition which purport to be approved and promulgated in accordance with Title I of the National Industrial Recovery Act, approved by the President June 16, 1933.
Plaintiff further says: That the purpose and intent of said supposed Executive Order No. 6646 and the effect thereof has been and is that it should operate to effectuate an illegal boycott against plaintiff, among others similarly situated, with the result that plaintiff, among others similarly situated, is and has been prevented from bidding and from selling its products, directly or indirectly, to any agency of the United States, to any state, municipal corporation, local subdivision, person or to any corporation or person participating in or aiding and abetting such boycott unless plaintiff surrender and agree to surrender, as a condition of making such bids and as a condition of making such sales, its rights under the Constitution and laws of the United States, and submit itself and agree to continue to submit itself to legislative, judicial and executive impositions not within the power or jurisdiction of the Executive branch of the United States nor *245 within the power or jurisdiction of any branch of the Government of the United States as herein specified.
Plaintiff connects the defendants herein by making the following allegations: That among those participating in aiding and abetting said boycott, and in effectuating the same, in pursuance of the terms of said supposed Executive Order No. 6646, are the defendant Hem-y A. Wallace, and the defendant Harold L. Ickes and the defendant Thomas H. MacDonald in that they and each of them and their respective subordinates under their direction acting in concert and in mutual cooperation with each other are putting said Executive Order No. 6646 into effect in all cases of invitations to bid and contracts wherein and whereby materials are purchased or funds are to be disbursed or by said Department of Agriculture including therein funds disbursed or to be disbursed for roads constructed under direct contract with the United States, or with an agency of the United States, and also roads constructed, or to be constructed, by the State of New Jersey and others, wholly or in part, with funds loaned or granted by an agency of the United States, no government contractor, no state, municipal corporation, local subdivision, person or Corporation, shall, in connection with any project carried out, or to be carried out, wholly or in part with fundsi loaned' or granted or supplied by any agency of the United States, accept or purchase for the performance of any contract or purchase order or enter into any subcontracts for any articles, materials or supplies, in whole or in part, produced or furnished by any person who shall not have certified that he is complying with and shall continue to comply with each code of fair competition which relates to such articles, materials or supplies, and in case there is no approved code for the whole or any portion thereof, then, to that extent, with agreement with the President as aforesaid.
It appears that plaintiff rests his case upon the theory that the President in issuing Executive Order No. 6646 under *246 authority of the National Industrial Recovery Act had for his purpose in promulgating said Executive Order the intent to injure plaintiff by effectuating an illegal boycott against plaintiff and thereby excluding plaintiff from the markets which have been heretofore described; plaintiff states the result by saying that it has been prevented from selling its products directly or indirectly in the markets described; plaintiff complains of the defendants herein by saying that they are participating in and are aiding and abetting the boycott and by such participation are effectuating the same, in pursuance of the terms of Executive Order No. 6646. Executive Order No. 6646 provides as follows:
1. (a) All invitations to bidders hereafter promulgated by or in behalf of any executive department or independent establishment or other agency or instrumentality of the United States, including government owned and government controlled corporations (all of the foregoing being hereinafter described as agencies of the United States), shall contain a provision to the effect that no bid will be considered unless it includes or is accompanied by a certificate duly executed by the bidder stating that the bidder is complying with and will continue to comply with each approved code of fair competition to which he is subject, and if engaged in any trade or industry for which there is no approved code of fair competition, then stating that as to such trade or industry he has become a party to and is complying with and will continue to comply with an agreement with the President under Section 4(a) of the National Industrial Recovery Act.
(b) No bid which does not comply with the foregoing requirements shall be considered or accepted.
(c) All contracts and purchase orders authorized by any agency of the United States shall contain a provision to the effect that the party or parties awarded any such contract or purchase order shall comply with each approved code of fair competition to which it is subject and if engaged in any trade *247 or industry for which there is no approved code of fair competition, then, as to such trade or industry, with an agreement with the President as aforesaid; and that the United States shall have the right to cancel any contract for failure to comply with such provision and make open market purchases or have the work called for by the contract otherwise performed, at the expense of the contractor.
(d) No agency of the United States and no Government contractor or supplier shall hereafter accept or purchase for the performance of any contract or purchase order or enter into any subcontracts for any articles, materials or supplies, in whole or in part produced or furnished by any person who shall not have certified that he is complying with each code of fair competition which relates to such articles, materials, or supplies, or in case there is no approved code for the whole or any portion thereof, then, to that extent, with an agreement with the President as aforesaid.
(e) The foregoing provisions of this order shall likewise apply to all contracts and purchase orders authorized by any state, municipal corporation, local subdivision, person or corporation in connection with projects carried out or to be carried out, wholly or in part, with funds loaned or granted by any agency of the United States, and all contracts and agreements for the making of any such loan or grant shall contain a provision requiring the state, municipal corporation, local subdivision, person or corporation receiving such loan or grant, to comply with the provisions of this order; provided that this paragraph shall not be construed as requiring the restriction of the use of materials to- those produced within the United States nor to require price differentials in favor of such materials.
2. Any person falsely certifying as to compliance as aforesaid who submits any such proposal, bid, contract or subcontract or accepts any purchase order, may be punished as provided in Section 10(a) of the National Industrial Re *248 covery Act, by a fine of not to exceed Five Hundred Dollars ($500) or imprisonment not to exceed six months, or both, and in event of any such false certification by any such person, any contract, subcontract, or purchase order to which he is party secured by or in furtherance of any such proposal or bid may be cancelled by the other party thereto, and the unfinished portion thereof completed at the expense of the person guilty of such false certification and his sureties, if any.
3. Whenever a dispute shall arise between any agency of the United States and any bidder, contractor, supplier or other person as to compliance with any Code of Fair Competition or with an agreement with the President as aforesaid in connection with any proposal, bid, contract, subcontract, or purchase order mentioned herein, the Administrator for Industrial Recovery, or such agency as he shall designate, shall decide such dispute and, for the purposes of action under this Executive Order, such decision shall be final and conclusive; but the determination of such agency of the United States shall be effective for all purposes pending such- decision.
4. All provisions of approved Codes of Fair Competition shall apply to the making and performance of contracts with or sales to agencies of the United States.
5. The Administrator for Industrial Recovery may make exceptions in specific cases or otherwise under this Order whenever such action shall be recommended to him by an agency of the United States and when in the judgment of the Administrator justice or public interest will best be served thereby.
6. Any provisions of Executive Order No. 6246, signed August 10, 1933, or any other Executive Order, and any rule or regulation in conflict herewith are hereby to that extent modified and rescinded.
It becomes important to understand the nature of a boycott. Mr. Justice Lamar in Gompers v. Bucks Stove and Range Co., 221 U.S. at page 437, said, “Courts differ as to what constitutes a boycott that may be enjoined. All hold *249 that there must be a conspiracy causing irreparable damage to the business or property of the complainant.”
Conspiracy in its broad sense denotes a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means. Pettibone v. U.S., 148 U.S. 203. Participation in a common plan by two or more persons is not in itself a conspiracy; in order to make it such, the motives of those who enter into the combination must be corrupt. People v. Flack, 125 N. Y. 324. Persons who agree in good faith to do an act innocent in itself do not become guilty of conspiracy if it is afterwards ascertained that the act is forbidden by statute. People v. Powell, 63 N.Y. 88. In the definitions the terms criminal or unlawful are used, because it is manifest that many acts are unlawful which are not punishable by indictment and prosecution, and yet there is no doubt that a combination by numbers to do them is an unlawful conspiracy. State v. Rowley, 12 Conn. 101. The word 'conspiracy’ imports moral obliquity. Plumber v. Houghton and Dutton Co. (Mass.) 178 N.E. 716.
As to boycott it has been held that intentional injury is essential, Hoban v. Dempsey, 217 Mass. 166. In Clarkson v. Lablan, 178 Mo. App. 708, a boycott is defined as “a conspiracy formed and intended directly or indirectly to prevent the carrying on of any lawful business or to injure the business of anyone by wrongfully preventing those who would be customers from buying anything from or employing the representatives of such business by threats, intimidation or other forceable means.” In Oxley Stave Co. v. Coopers International Union, 72 Fed. 695, it is said the term 'boycott’ has acquired a significance in the vocabulary of the court and the literature of the law and it implies a combination to inaugurate and maintain a general proscription of articles manufactured by the party against whom it is directed.
*250 The common colloquial use of the word ‘boycott’ is that of injurious discrimination. The word is usually understood to mean a combination of persons to cause loss to another by coercion through threats direct or implied. Here plaintiff uses the word ‘boycott’ but the allegations of his bill are found to be insufficient to charge an actionable wrong. They lack the elements of conspiracy; they do not portend a threat or intimidation. Organization is not shown; whereas a ‘boycott’ involves as a necessary element a combination with a view to joint action.
To charge these defendants with the intent to injure plaintiff by means of a boycott without specifying the facts of a conspiracy, like the mere shout of fraud, falls short of stating an actionable wrong. It would be as reasonable to charge the members of Congress with the intent to injure plaintiff by the enactment of the National Industrial Recovery Act, as it is to charge the President with such intent in promulgating Executive Order No. 6646 in administering the law or to impute such intent to these defendants by alleging that they are aiding and abetting a conspiracy to harm plaintiff by means of a boycott, in observing and enforcing such executive order.
Congress has unlimited power to prescribe such rules and regulations as it sees fit regarding the public works of the United States, and for work for which its funds are to be expended.
The constitutionality of its legislative acts and the validity of powers delegated to or duties placed upon the President may not be tested in a case such as this, where no invasion of legal rights is shown and where there is no threat of immediate and irreparable injury to warrant the intervention of a court of equity. Any decree which this court might enter upon the allegations of the bill would, in its legal effect, be declaratory only, and plaintiff is not entitled to such as relief or remedy.
The motion to dismiss is granted.