JAMES L. CLARKSON, Respondent, v, FREDERICK LAIBLAN et al., Appellants.

St. Louis Court of Appeals, December 2, 1913.

1. INJUNCTIONS: Work and Labor: Right to Enjoin Interference: Conspiracy. A person's occupation partakes of the character of property, and he is entitled to have it protected by injunction, when other persons conspire to, and actually do, interfere with its prosecution, in such a manner as to work substantial injury upon him.

2. WORK AND LABOR: Unlawful Interference: Conspiracy. In view of the fact that one's occupation partakes of the character of property and that he is entitled to life, liberty and the pursuit of happiness, so long as he does not infringe upon the right of others, it is unlawful for several persons to conspire together to oppress him and entail a substantial injury

to his lawful business or means of livelihood, as by coercing his employer to discharge him and cancel a subcontract, under a threat that they will cause a strike of his employees if he fails to do so.

3. CONSPIRACY: What Constitutes. A combination of two or more persons by some concerted action, either for the purpose of accomplishing an unlawful act or for the purpose of accomplishing a lawful act by unlawful means, constitutes a conspiracy.

4. INJUNCTIONS: Work and Labor: Right to Enjoin Interference by Labor Union: Conspiracy. The regulations of a labor union, of which defendants were officers, forbade the employment of union workmen before, with, or to follow nonunion workmen, unless specially authorized, and its business agent, charged with enforcing its regulations, and who had authority to call a strike, coerced plaintiff's employer, by a threat of a strike, into discharging plaintiff, who was a nonunion workman, so that plaintiff lost his job as foreman and also lost a subcontract. *Held,* that this action on the part of the agent was unlawful, and as his acts were done under the established regulations and customs of the union, the other defendants, who were officers of the union, were, with him, guilty of an unlawful conspiracy, and all should be enjoined.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

AFFIRMED.

*T. J. Rowe, Thos. J. Rowe, Jr.,* and *Henry Rowe* for appellants.

(1) There is no evidence in this case upon which to bottom the decree entered herein. (2) The members of a voluntary association are not liable for the wrongful acts of the agents of such association unless they directed, participated in or approved of such wrongful acts. Mere membership in a voluntary association is not sufficient to make a member liable for the wrongful acts of the agents of such association. (3) Patrick Garvey, either as an individual or as a business agent of Local Union No. 1, was not guilty of any wrongful act or illegal act as against the plaintiff and

the evidence in this case fails entirely to make a prima-facie case upon which an injunction should issue.

*Albert E. Hausman* for respondent.

(1) The injunction was properly granted in this case because the defendants were unlawfully interfering with plaintiff's right to work for whomsoever would employ him, and with his right to contract with whomsoever would contract with him. Lohse Pat. Door Co. v. Fuelle, 215 Mo. 421; Erdman v. Mitchell, 63 L. R. A. 534; Plant v. Woods, 176 Mass. 492; Swaine v. Blackmore, 75 Mo. App. 78; O'Brien v. People ex rel., 216 Ill. Supr. 354; Giblan v. National Amalgamated Union, 2 K. B. 600; Beck v. Teamsters' Union, 118 Mich. 497; Purvis v. United Brotherhood, 214 Pa. 348; Blackmore v. Swaine, 75 Mo. App. 78. (2) A conspiracy to deprive nonunion men of employment and compel their discharge is illegal. Beck v. Teamsters' Union, 118 Mich. 497; Erdman v. Mitchell, 207 Pa. St. 79; Purvis v. United Brotherhood, 214 Pa. St. 348; Brennan v. United Hatters, 73 N. J. L. 729; Glass Co. v. Blowers' Ass'n, 66 Atl. 953.

NORTONI, J.—This is a suit in equity for injunctive relief. The finding and decree were for plaintiff and defendants prosecute the appeal.

Plaintiff is a journeyman roofer by occupation, and defendants are the business agent and officers of an unincorporated organization known as Local Union No. 1 of the International Brotherhood of Composition Roofers, Damp and Waterproof Workers, of St. Louis, Missouri. This organization, of which defendants are members, is affiliated with a central organization known as the Building Trades Council in the city of St. Louis. At the time complained of, defendant Frederick Laiblan, or Laibly, was president of Local Union No. 1, while defendant Eugene Moriarity was vice-president thereof, and defendant Michael Mc-

Carthy was recording secretary, and Michael Shannon its financial secretary, Edward J. McCarthy its treasurer, William Holstein its doorkeeper, and defendant Patrick F. Garvey its business agent. The several other defendants named in the bill were members of the executive committee of such local union. These defendants were all members of the voluntary association known as Local Union No. 1, and, as before said, were, through it, affiliated with the Central Building Trades Council. All of the building trades, save the brick layers of the city of St. Louis, were affiliated together in the Building Trades Council, but Local Union No. 1, of which these defendants are members, was constituted solely through the co-operation and affiliation of members engaged in the occupation of journeymen composition roofers.

It appears that plaintiff had been a member of Local Union No. 1 from 1903 to 1906; that then he was a journeyman water proof roofer and eligible to membership therein. In 1906 he embarked in the roofing business on his own behalf and became an employer of journeymen roofers, which, under the rules of the union, *ipso facto* terminated his membership therein. While thus engaged as a contracting roofer, plaintiff employed only members of Local Union No. 1 and complied with all of its rules. In the latter part of January, 1909, plaintiff sold out his business to the St. Louis Roofing Company and was employed by the general manager of that concern as a roofer. He worked one day for that company and was laid off. Thereupon Mr. Holland, the manager of St. Louis Roofing Company, sent word from his office to the shop foreman that plaintiff should be placed in charge of a gang of men as foreman at sixty cents per hour. On the morning of February 21, 1909, plaintiff appeared at the shop of the St. Louis Roofing Company and reported for work to the foreman. Defendant Patrick F. Garvey, business agent for Local Union No. 1, was

at the shop of the St. Louis Roofing Company at the time, as was his custom, for it is said he was present there every morning to see that no nonunion workmen were given work in preference to those who were members of the union. The foreman of the St. Louis Roofing Company handed a yellow slip of paper to plaintiff, indicating his position as foreman of a gang of roofers to which he had been assigned by Mr. Holland, the general manager. When defendant Garvey, business agent of the union, saw plaintiff in possession of the yellow slip, he inquired of Haley, the shop foreman, whether or not all of the other men there in attendance were to be given work that morning and Haley replied in the negative. Thereupon, Garvey said to Haley: "This man (meaning plaintiff) don't go to work either then." In obedience to Garvey's command, Haley took from plaintiff his yellow slip of paper and dispensed with his services as foreman. Plaintiff and Garvey then entered into a conversation about plaintiff joining the union. On the following night plaintiff applied to Local Union No. 1 for membership therein and was present in the anteroom waiting action on his application. All of the defendants here were at that meeting, unless it be Hurley, and it appears they considered plaintiff's application for membership, but deferred action thereon. Soon thereafter plaintiff submitted another application, but it is said it was rejected, and plaintiff was advised by defendant Garvey that this was because he had applied to the office through Mr. Holland for work instead of coming to the shop where Garvey was stationed.

Thereafter, on March 16, 1909, plaintiff entered into a contract with St. Louis Roofing Company to roof a building to be occupied by the Rohan Boiler Works and fourteen houses in Parkview. He entered upon this work as subcontractor, and on March 20, just as he was completing the task of roofing the building to be occupied by the Rohan Boiler Works, de-

fendant Garvey called upon him there and inquired what plaintiff was doing. Plaintiff informed Garvey he was roofing the building as subcontractor for the St. Louis Roofing Company, whereupon Garvey said to plaintiff, "You know we ain't going to let you do that." And plaintiff said in reply, "I don't see why, I telephoned for men and you wouldn't send them to me and I couldn't leave the job go." To this Garvey replied, "Well, if they (St. Louis Roofing Company) give you any more work Monday morning, I will call every man away from the St. Louis Roofing Company." It is in evidence that the St. Louis Roofing Company employed at the time from seventy-five to one hundred union men, who were members of Local Union No. 1, of which Garvey was the business agent. This conversation between Garvey and plaintiff occurred on Saturday afternoon, and immediately thereafter Garvey called Mr. Holland, manager of the St. Louis Roofing Company, over the telephone and made an appointment stating, according to the evidence of Mr. Holland, "that there was trouble on account of Mr. Clarkson subcontracting, and that if we didn't change the arrangement, that he would pull all the men off or there would be a strike of one hundred men Monday morning, something to that effect." Mr. Holland continued, "He (Garvey) came up to the office about five o'clock, I guess it was, and we talked the matter over and decided that we wouldn't subcontract to Mr. Clarkson (the plaintiff.)" Holland says that, while he could not state the precise conversation between him and Garvey, Garvey said, in effect, that a strike would be declared if he continued his contracts with plaintiff. Because of this threat Mr. Holland, for the St. Louis Roofing Company, called off and canceled the contracts with plaintiff for the roofing of the fourteen houses in Parkview, and plaintiff was therefore unemployed for a considerable time. The evidence of Holland, manager of the St. Louis Roofing

Clarkson v. Laiblan.

Company, is that that company had in its employ from seventy-five to one hundred union men, members of Local•Union No. 1, at the time, and that its business was pressing; that the contracts with plaintiff were called off and its business relations with him terminated, because he knew Garvey was the business agent of the union and was in a position to entail loss upon the St. Louis Roofing Company if the demand were not complied with.

It appears that there are about 225 roofers in all in St. Louis and all but about twenty of them belong to the union. Nearly, or about, one-half of this number were in the employ of the St. Louis Roofing Company at the time. Moreover, it appears that ninety per cent of all of the men engaged in the various building trades, save bricklayers, are members of the various building trades local unions, which are affiliated together. It does not appear that any of the defendants personally, save Garvey, interfered with plaintiff, or that they personally threatened his employer, the St. Louis Roofing Company, but the case concedes that Garvey was the business agent of the union of which the other defendants were officers. It appears, too, that Garvey and others constituted a committee of delegates which represented Local Union No. 1, of which the other defendants are officers, in the Central Trades Council. It is in evidence, too, that no one of the mechanics, affiliated with the Building Trades Council, whether through Local Union No. 1, to which the roofers belonged, or others, is permitted to work with, before or after any nonunion man, on pain of a fine or other penalty to be imposed. Moreover, it appears that, under the rules of the union in force at the time, any employer who employs nonunion men, without the consent of the union to which defendants belonged, is subject to a fine which the union will impose and which must be paid before the embargo

Clarkson v. Laiblan.

thus levied is raised and the union men permitted to engage again in his service.

It appears that defendant Garvey had been the business agent for Local Union No. 1, of which his co-defendants are officers, for a number of years, and visited the shops of the St. Louis Roofing Company and others engaged in that business daily. Among other things, it was the duty of Garvey to see that none but union men were permitted to work, without special permission from himself or the union. Among other things, plaintiff testifies that Garvey informed him that he ''could stay at his own little business''—that is, the business which he had theretofore sold out. And it appears clear enough that Garvey's threats, communicated first to the foreman and then to the manager of plaintiff's employer, caused him to lose his position as a foreman of the gang and afterwards occasioned the cancellation of his several contracts. Besides the testimony of the manager of the St. Louis Roofing Company that he canceled plaintiff's contracts in order to obviate the trouble and loss which would be entailed as a result of Garvey's "pulling off his men," or ordering a strike, plaintiff testified: ''Mr. Holland told me that they was too busy to have any trouble and he says, 'I will have to take them contracts away from you.' '' None of the defendants took the stand, and the case rests alone upon the evidence of plaintiff and his several witnesses, who fully corroborate him throughout.

Obviously the court did not err in decreeing a perpetual injunction against all of the defendants on this evidence. It is certain that a man's occupation, whether it be that of a roofer, laborer or what not, partakes of the character of property, and he is entitled to have it protected by the process of injunction when other persons confederate and conspire to and actually interfere with its prosecution, is such a manner as to work substantial injury upon him. A recent judgment

of our Supreme Court is authority in point to this effect. [See Lohse Patent Door Co. v. Fuelle, 215 Mo. 421, 114 S. W. 997.] Here it appears, and this too without contradiction, that Garvey represented the other defendants, all of whom are officers of Local Union No. 1, in threatening to pull off the union men employed by plaintiff's employer, the St. Louis Roofing Company, unless it terminated all beneficial business relations with plaintiff. The evidence is abundant that Garvey was acting within the scope of his authority as business agent of the union and carrying out both the letter and the spirit of its rules and regulations in so doing. It is certain that neither one man nor a multitude organized together have the right to coerce an employer, through threats to impair his business or cause a loss to him, to discharge another person from his services. [See Swaine v. Blackmore, 75 Mo. App. 74.] Because a man's occupation partakes of the character of property and for the reason, too, that everyone enjoys the right to life, liberty and the pursuit of happiness, so long as he does not infringe upon the rights of others, it is unlawful for several persons to confederate, conspire and co-operate together, to the end of oppressing another through substantial injury, from prosecuting his lawful means of livelihood. [Door Co. v. Fuelle, 215 Mo. 421, 114 S. W. 997.] It is certain that a combination of two or more persons by some concerted action, either for the purpose of accomplishing an unlawful act or for the purpose of accomplishing a lawful end by unlawful means, constitutes a conspiracy. [See State v. Dalton & Fay, 134 Mo. App. 517, 114 S. W. 1132.] Here, though the organization of the union and the membership therein were entirely proper and lawful, the end sought to be achieved in coercing plaintiff's employer to discharge him and to terminate and refuse further beneficial business intercourse with him was unlawful. Therefore, the confederation being present, a conspiracy

against the rights of plaintiff appears well established.

In this connection, it is pertinent to copy the definition of a boycott, recently approved by our Supreme Court, for it reflects the principle involved in the judgment in the instant case:

"A boycott may be defined to be a combination of several persons to cause a loss to a third person by causing others against their will to withdraw from him their beneficial business intercourse through threats that, unless a compliance with their demands be made, the persons forming the combination will cause loss or injury to him; or an organization formed to exclude a person from business relations with others by persuasion, intimidation, and other acts, which tended to violence, and thereby cause him through fear of resulting injury to submit to dictation in the management of his affairs. Such acts constitute a conspiracy, and may be restrained by injunction. . . . All the authorities hold that a combination to injure or destroy the trade, business or occupation of another by threatening or producing injury to the trade, business or occupation of those who have business relations with him is an unlawful conspiracy regardless of the name by which it is known, and may be restrained by injunction." [Door Co. v. Fuelle, 215 Mo. 421, 446, 447, 114 S. W. 997.]

The evidence reveals that the rules and regulations of the union, with which all of defendants were affiliated and in which they occupied the several offices, forbade the employment of nonunion workmen either before, with or to follow union workmen, unless specially authorized. Moreover, it appears to be the duty of the business agent, defendant Garvey, to proceed, as the representative of the union and its members, to enforce the regulations in respect of such matters. This being true, it is entirely clear that, though Garvey was the only one of the defendants actively pursuing the plaintiff and coercing his em-

ployer, he did so at the behest of all under the established regulations and customs of the union.

It seems to be tacitly conceded in the brief that a case is made against Garvey, but it is argued that the evidence fails to show he was authorized to call a strike or "pull off the men" as he threatened. It appears plaintiff had been a member of the union theretofore and that Mr. Holland, manager of the St. Louis Roofing Company, had employed its members for years. Both of these witnesses testified that Garvey possessed authority in this behalf, and, indeed, the entire evidence affords a strong inference to that effect. The court was certainly justified in finding such to be the fact. Moreover, Rule 39 in the book of rules of the Building Trades Council, which was introduced in evidence, without objection, provides that no member of any trade affiliated with the council shall be permitted to work on any job declared unfair and must cease work thereon at the call of any duly authorized business agent. Though we regard the evidence sufficient without reference to this rule on the score of Garvey's authority, such authority is certainly set forth with clearness therein.

The judgment against all of the defendants should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.