JAMES L. CLARKSON, Respondent, v. FREDERICK
 LAIBLAN or FREDERICK LAIBLY et al.,
 Appellants.

St. Louis Court of Appeals. Opinion Filed December 2, 1919.

1. **MASTER AND SERVANT: Labor Unions: Unawful Acts of Busi-
 ness Agent: Depriving Former Member of Employment by Threats of
 Strikes: Liability.** In an action for damages against officers and
 members of a labor union by a former member, where defendants
 by reason of threats and intimidation and in fear of a strike, etc.,
 through their business agent, resorted to methods which in effect
 deprived the contracting company of its free will in the matter
 of carrying out its contract with plaintiff, which it desired to do,.
 thereby causing the contracting company to breach its contract
 with plaintiff, *held* in such case the acts of the defendants would
 be considered the proximate cause of the damage, and therefore
 as giving a cause of action.

2. ———: ———: ———: **Evidence of Rules and Customs of Labor
 Union as to Authority of Business Agent Sufficient to Uphold Verdict.**
 In an action for damages against officers and members of a labor
 union for having procured plaintiff's employing company to breach
 its contract with plaintiff under threats of a strike, etc., evidence
 as to the rules, customs and usages of the union and also as to
 the authority of the business agent, even though conflicting, *held*
 sufficient to uphold the verdict of the jury in behalf of plaintiff.

3. **LABOR UNIONS: Acts of Business Agent Within Scope of Au-
 thority Bind Union.** While there was no specific by-law of the
 union which conferred authority upon the business agent to order
 a strike, where it appears from the evidence that it was his duty
 to visit the union shops at regular intervals to see that none
 but union men were employed and to use his own judgment, etc.,
 these acts on the part of the business agent of the union being
 within the scope of his authority, the officers and members of
 the union were bound thereby.

4. ———: ———: **Union Liable For Acts of Business Agent in Threat-
 ening to Call Strike to Procure Cancellation of Contract.** Where it
 appears that the business agent of a union had authority to en-
 force the rules of the union, if in exercising that authority he
 threatened to call a strike in the event the company employing
 plaintiff did not cancel and annul plaintiff's contracts, defendants

would be liable for his acts, although they did not specifically give him any authority to threaten anyone.

5. ———: Instructions: Instruction on Ratification of Acts of Business Agent Approved. In an action for damages against the officers and members of a labor union based upon the acts of the business agent of the union in resorting to methods depriving the employing company of plaintiff of its free will in carrying out its contract with plaintiff, etc., an instruction that, if defendants, members of the union, ratified the acts of the business agent of the union, the verdict must be for the plaintiff, *held* sustained by the evidence.

6. ———: ———: Union Liable for Acts of Business Agent Although Not Malicious. If the business agent of a labor union had authority to act for the union, the defendants were liable for his acts and the manner in which he performed them, even though defendants were not guilty of any malicious acts against the plaintiff.

7. ———: ———: Union Liable for Wrongful Acts of Business Agent Within Scope of Authority Independent of Knowledge. The members of a voluntary association such as a labor union are liable for the wrongful acts of an agent in the event he had authority to act for the union and did so within the scope cf his authority; though they had no knowledge of such wrongful acts and neither directed him in the performance of same nor approved of their commission.

8. DAMAGES: Punitive Damages: Excessive Damages. A verdict for the sum of $1200 punitive damages and $55 compensatory damages rendered against the members of a labor union on account of the union's wrongful acts in procuring the cancellation of contracts, etc., by threats of a strike, etc., *held* the verdict, under the circumstances, is not excessive.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. J. Hugo Grimm,* Judge.

Affirmed.

*T. J. Rowe* for appellant.

(1) The *allegata* and *probata* must correspond. Reed v. Bobb, 100 Mo. 62; Dorothy v. Atkins, 78 Mo. 186; Baldwin v. Whaley, 81 Mo. 416; Ross v. Ross, 81 Mo. 84; Newan v. Kenton, 79 Mo. 382. (2) Associations

and clubs, the object of which are social or political, and not for purposes of trade or profit, are not partnerships, and pecuniary liability can be fixed upon the individual members of such associations only by reason of the acts of such individuals or of their agents, and the agency must be made —none is implied from the mere fact of association. Richmond v. Judy, 6 Mo. App. 467. (3) There is no evidence in this case that the defendants conspirred to injure the plaintiff, and there is no evidence in the case that they authorized or directed anyone to do anything in connection with plaintiff's employment by the St. Louis Roofing Company. (4) There is no evidence in this case that Patrick Garvey, by virtue of his office as business agent, had authority to call a strike or to interfere in any manner with the work of the plaintiff. (5) The court should have instructed the jury that the members of the association were not liable for the wrongful acts of Patrick Garvey unless they had knowledge of such wrongful acts and either directed him in the performance of the same or approved of their commission . (6) The court should have instructed the jury that there was no evidence tending to prove that the defendants were guilty of any malicious act against the plaintiff. (7) Plaintiff's instruction as modified by the court should not have been given because there was no evidence the case that Garvey was acting within the scope of the authority conferred upon him by local Union No. 1 as its business agent if he caused the St. Louis Roofing Company to rescind its contract with plaintiff or if he caused it to discharge plaintiff from its employ. (8) Defendants could not be liable for the acts of Patrick Garvey unless he had express authority as the agent of the union to act witr reference to the plaintiff's working for the St. Louis Roofing Company. (9) There is no evidence in the case that the defendans' either directly or indirectly, authorized Patrick Garvey to order a strike or prohibited the members of the union working for the St. Louis Roofing Company.

(10) The punitive damages are grossly excessive and the result of bias, prejudice and passion.

*Albert E. Hausman* for respondent.

(1) Every member of Local Union No.1 is liable in damages to any person who suffers loss through the enforcement of its written or unwritten rules which provide that no man can work as a roofer in any union shop in St. Louis unless he is a member of their union or unless he is otherwise satisfactory to it. Purington v. Hinchcliffe, 219 Ill. 159; Doremus v. Hennessy, 176 Ill. 508; Eddy on Combinations, pars. 368, 376 and 380; Giblan v. National Amalgamated Laborers' Union, 2 K. B. (1903) 600; Taff Vale Railway v. Amalgamated Society, 1901 Appeal Cases 426; Walsh v. Master Plumbers, 97 Mo. App. 292; Lohse Patent Door Co. v. Fuelle, 215 Mo. 421; Lawler v. Loewe, 235 U. S. 522; Sutton 1. Workmeister, 164 Ill. App. 105; Irving v. Neal, 209 Federal Rep. 471. (2) To cause the breach of a contract by threats of a strike against one of the contracting parties is an actionable wrong. Clarkson v. Laiblan et al., 178 Mo. App. 708; Berry v. Donovan (Mass.), 5 L. R. A. (N. S.) 899; Quinn v. Leathem, 1901 Appeal Cases 495; Curry v. Galen, 152 N. Y. 33; Brennan v. United Hatters, 9 L. R. A. (N. S.) 254; Luecke v. Clothing Cutters, 19 L. R. A. 408; Giblan v. Amalgamated Union, 2 K. B. (1903) 600; Thomas v. C. N. O. Ry., 62 Federal Rep. 803; Moore v. Bricklayers' Union, 23 Weekly Cincinnati Law Bulletin 48; Foundry Co. v. Moulders Union, 177 Mo. App., 84; Sutton v. Workmeister, 164 Ill. App. 105; London Guaranty Co. v. Horn, 101 Ill. App. 335, and 176 Illinois Supreme 608; Wilner v. Silverman, 109 Maryland Rep. 341; Illinois Steel Co. v. Brenshall, 141 Ill. App. 36; Gibson v. Fidelity Company, 232 Ill. Sup. 49; Huskie v. Griffin, 75 N. H. 345; Hey v. Wilson, 232 Ill. 389; Reed v. Friendly Society of Stone Masons, 2 K. B. (1902), page 88; Booth v. Burgess, 65 Atlantic

Reports 226; Lohse Patent Door Co. v. Fuehle, 215 Mo. 421; Carter v. Oster, 134 Mo. App. 146; Swain v. Blackmore, 75 Mo. App. 74; Lally v. Cantwell, 30 Mo. App. 524, and 40 Mo. App. 44; Beekman v. Marstens, 195 Mass. 205. (3) Combinations between officers and members of a labor union having for their direct object the immediate effect to injure and damage the business of persons at whom they are directed and thereby compel them to discharge their non-union employees 'and replace them with members of the union, and thereby incidentally and indirectly to benefit the parties to the combination, are unlawful. Lohse Patent Door Co. v. Fuelle, 215 Mo. 421; Clarkson v. Laiblan, 178 Mo. App. 708. (4) When a business agent acts within the scope of his employment and the organization's purposes, all the defendants are liable for his wrongful acts. Clarkson v. Laiblan, 178 Mo. App. 708; Lawler v. Loewe, 235 N. S. 522; Hitchcock v. Mitchell et al., 245 U. S. 229; Irving v. Neal, 209 Fed. Rep. 471; Sutton v. Workmeister, 164 Ill App. 105; Alaska S. S. Co. v. International Longshoremen's Union, Misc. 388; Giblan v. Nat. Amalgamated Union (1903), 2 K. 699; 1 British Ruling Cases, page 553.

BIGGS, C.—This is a damage action originally filed by James L. Clarkson against the defendants-appellants, and Patrick Garvey, John Lyons and John F. Scarry, officers and members of a labor organization known as Local Union No. 1 of the International Brotherhood of Composition Roofers, Damp & Waterproof Workers of St. Louis and vicinity. By reason of the death of Garvey, Lyons and Scarry the suit against them was dismissed.

Plaintiff is a journeyman roofer by occupation, and the defendants are officers of the said roofers union which organization is affiliated with the central organization known as the Building Trades Council of the city of St. Louis.

At the time complained of the defendant Frederick Laiblan, was the president of the said roofers union, defendant Eugene Moriarity, was vice-president, defendant Michael McCarthy, was recording secretary, Michael Shannon, financial secretary, Edward JJ. McCarthy, treasurer, William Holstein, doorkeeper, and Patrick F. Garvey was its business agent. The other defendants, Ora Monday, Joseph P. Kelley and Jerry Hurley were members of the executive committee.

Upon a trial below there was a verdict in favor of plaintiff against all of the defendants upon the second count of plaintiff's petition in the sum of $55 compensatory damages and $1200 punitive damages,

The said second count of the petition, after setting up the relations of the various parties to the suit, alleges in substance that, the said local union at the times mentioned embraced within its membership ninety per cent of the roofers of St. Louis and vicinity, and that under its rules, usages and customs the members thereof are not permitted to work for any contracting roofers who do not refuse employment to all roofers not members of said union and who do not comply with the rules, usages and customs thereof, and under said rules and customs no contracting roofer is permitted to employ any person who is not a member of said union under penalty of having a strike declared upon him by said union and a fine imposed upon him; that by reason of embracing within its membership ninety per cent of said roofers, said local union and its officers and agents controlled the employment of composition roofers by all of the larger and more important employers; that there is in St. Louis an unincorporated organization known as St. Louis Building Trades Council; and that there are in St. Louis voluntary associations of carpenters, painters, plumbers, tinners, plasterers and other mechanics employed in the various trades connected with the erection of buildings in St. Louis and vicinity, which organizations are known as labor unions, and that said labor unions embrace within

their membership about ninety per cent of all mechanics employed in the building trades.

That the said Building Trades Council is composed of representatives from the above memtioned labor unions, and that the said roofers union is represented and affiliated with said Buildng Trades Council; that under the said rules and customs of the said Building Trades Council and of the other organizations therein represented, no members of any of said labor unions are permitted to work on any job in St. Louis if any workman who does not belong to said unions is found at work on said job or is permitted to work thereon, and that if a mechanic who does not belong to said unions is found at work with mechanics who are members of said unions the employer is required by the business agent of the organization to discharge said non-union mechanic, and that if said non-union mechanic is not discharged, then under the rules and customs of said unions and the said Building Trades Council, all the union men employed on the job are required to strike, and all union men employed by the employer are required to refain from employment by said employer on any job until all non-union men are discharged; that all union men engaged in work at the various building trades are required by their agreement with one another and with the various other unions to which they belong to refuse employment on any job whereon is engaged the employer of non-union labor; and the said job in that event is designated an "unfair" job, and the employer of non-union labor is fined by the said labor unions and the said Building Trades Council and compelled to pay said fine before he is permitted to employ any members of said labor unions, or work on any job whereon are employed any members of said above labor unions.

That by reason of the rules and customs as stated, the said roofers union and the defendants as agents and officers thereof, are enabled to prevent any employer of roofers in the City of St. Louis from employing

plaintiff or contracting with plaintiff by coercing and intimidating said employer with a threat that if they employ or contract with the plaintiff, the said defendants as agents of said union will order all manner of mechanics affiliated with said organizations referred to to quit their employment and to strike against their employers until the said employer or contractor with plaintiff shall cease all business relations with plaintiff, and that the said defendants will by virtue of the said rules and customs impose a fine on any one who employs or contracts with plaintiff and will require all mechanics affiliated with said labor unions to quit or cease their employment with any employer of plaintiff and to order a strike on any job where plaintiff is employed until the said fine is paid.

By said petition it is further alleged that plaintiff in 1903 was a journeyman roofer and a member of said roofers union and remained as such until 1906, when he became a contracting roofer, and by reason thereof was required to terminate his membership in said union; that while he was so engaged and until February, 1909, he submitted to all the rules and customs of said roofers union and employed only union men; that in February, 1909, plaintiff sold out his business as a contracting roofer to the St. Louis Roofing Company and secured employment with that company; that on February 22, 1909, while employed by the St. Louis Roofing Company as a journeyman roofer, the said defendants refused to permit plaintiff to work for said company under his said employment unless all of the unemployed members of said roofers union who were in attendance at the plant of said roofing company were first placed at work, and that said union by its agents and officers, the defendants, threatened that if plaintiff was placed at work before the unemployed members of said union, its officers and agents would order and require all members of said roofers union to strike and refuse to work for said roofing company until such time as plaintiff should be discharged from the said employment.

202 M, A,—44

That by the said threat the said roofing company knew and the said roofers union and agents and officers also knew, that unless the said demand of said roofers union, through its officers and agents, was complied with and plaintiff discharged, said St. Louis Roofing Company would be declared an "unfair" or non-union shop and its business placed under what is known as a boycott, and the said roofers union and its officers and agents, would do all in their power to prevent said roofing company from doing any work in the City of St. Louis, and would prevent any and all workmen represented in said Building Trades Council from working before, with or after St. Louis Roofing Company on any job in the city, and further that the said roofing company would be fined by said roofers unions and compelled to pay said fine before said strike and boycott to its business would be removed by the said roofers union and these defendants.

That thereupon the said roofing company refused to permit plaintiff to begin work under his said employment, and that thereafter on February 23, 1909, plaintiff sought to become a member of said roofers union and tendered the required admission fee, but that his application for membership was wrongfully denied; that thereafter on March 9, 1909, the plaintiff did again apply for membership, which membership, however, was wrongfully refused; that thereafter on March 16, 1909, plaintiff entered into a contract with said St. Louis Roofing Company, whereby it was agreed that plaintiff as an independent contractor, should procure labor and help and place under roof for said roofing company houses in the City of St. Louis, which contract was to obtain until dissolved by mutual consent of the parties; that said plaintiff began work under said contract on March 16, 1909, and that on March 20, 1909, the defendants and said roofers union, acting through these defendants as its authorized agents, did notify plaintiff, and did notify the said St. Louis Roofing Company that unless the contract under which plaintiff was then work-

ing, and all other contracts between said roofing company and plaintiff, whereby plaintiff was employed to roof houses for said company, were canceled and annulled and plaintiff refused permission to work thereunder, or to work on any job as a roofer for said roofing company, they, the said roofers union, and its officers and agents, being the present defendants, would cause and require all members of said roofers union to quit work and to refuse to work for said roofing company until such contracts should be annulled and it threatened to call a strike against said St. Louis Roofing Company unless plaintiff was prevented from working under his said contracts.

It is further alleged that thereupon and in order to escape a total interruption of its business and also great loss and delay and also violence to its property, said roofing company did annul its contracts with plaintiff and did order plaintiff to discontinue all work for it; that by calling a strike defendants and said roofers union intended to convey to said roofing company and said roofing company knew that no other workmen would be permitted to take the place of those who were required to quit at the order of said roofers union and its officers and agents, and that its business could only be carried on with immediate danger of violence to its officers and property, and that its jobs would be declared "unfair," and that no mechanic belonging to any union affiliated with the Building Trades Council would be permitted to work for said roofing company on any job of work it might have in St. Louis.

By said count it is further alleged that said roofers union and its officers and agents, being these defendants, did wilfully and maliciously conspire together and with each other, to prevent plaintiff from following his trade as a roofer, and have wilfully and maliciously conspired together and with each other to cause plaintiff to lose his employment and contracts with said St. Louis Roofing Company, and that the said acts were malicious, and that by reason thereof plaintiff has been

caused to lose his said employment and contracts with St. Louis Roofing Company, to his loss and damage.

After unsuccessfully demurring to the said second count of the petition, defendants filed an answer by way of general denial.

After the verdict as heretofore stated and the filing and overruling of a motion for new trial, the defendants have appealed to this court, assigning errors as follows:

1st.    That the said second count fails to state facts sufficient to constitute a cause of action.

2nd.    That there is no evidence in the case tending to support the allegations of the petition.

3rd.    That the court should have instructed the jury that the plaintiff could not recover.

4th.    That the Court erred in refusing to give defendants' instructions.

5th.    That the court erred in giving plaintiff's instructions.

And lastly, that the punitive damages are excessive.

It will not be necessary to go into the detail of the evidence disclosed by the record, for the reason that the facts have heretofore been stated in two opinions delivered by this court, and reference is here made to those opinions for a full statement of facts. [See Clarkson v. Laiblan et al., 178 Mo. App. 708, 161 S. W. 660; and Clarkson v. Garvey, 161 S. W. 664.]

We have examined the records upon which these opinions were based and find that they do not substantially differ from the evidence adduced by the plaintiff in the present case.

In the first of the above opinions this court, through NORTONI, J., after fully stating the facts, affirmed the decree of the lower court which granted to the plaintiff an injunction against these defendants which enjoined them from continuing the acts complained of in the petition. It was there held under the evidence that the actions of Garvey, the business agent, were unlawful, and that as his acts were done under the established rules and customs of the union, the other defendants who

were officers of the union were with him guilty of an unlawful conspiracy and that all of them should be enjoined.

These same acts of defendant Garvey are now the basis of this action for damages. If the said acts were unlawful as this court held and should be enjoined, it necessarily follows that the said acts can form the basis for a suit for damages.

The gist of the second count is to the effect that by reason of the unlawful acts of defendant Garvey as business agent of the union, the St. Louis Roofing Company was caused to annul its contracts with the plaintiff.

The question presented by the demurrer is whether the alleged procurement by the defendants of breaches of contract which the roofing company had with the plaintiff can form the basis of a cause of action by plaintiff against the defendants. It is alleged in the petition in substance, that by reason of threats and intimidation and fear of a strike which was threatened, that the St. Louis Roofing Company was caused to breach the comtract with plaintiff.

We think the demurrer was well ruled, and that where the defendants, through their agent as alleged, resorted to methods which in effect deprived the St. Louis Roofing Company of its free will in the matter of carrying out the contract with plaintiff which it desired to do, that in that case the acts of the defendants would be considered the proximate cause of the damage and therefore as giving a cause of action. [Clarkson v. Laiblan et al., 178 Mo. App. 708, 161 S. W. 660; Door Company v. Fuelle, 215 Mo. 421, 114 S. W. 997; Carter v. Oster et al., 134 Mo. App. 146, 112 S. W. 995; Berry v. Donovan, 5 L. R. A. (New Series) 899; Curran v. Galen, 152 N. Y. 33;   Giblan v. Amalgated Union, 2 K. B. (1903) 600; Quinn v. Leathem (1901), Appeal Cases, 495; Luecke v. Clothing Cutters, 19 L. R. A. 408; Brennan v. United Hatters, 9 L. R. A. (N. S.) 254; Sutton v. Workmeister et al., 164 Ill. App. 105.]

Having held that the demurrer was properly over-ruled, it follows that the second and third assignments of error of the defendants should likewise be overruled in the event there was evidence in the record to substantiate the allegations of the second count of the petition.

While the evidence in the record is conflicting as to the rules, customs and usages of the union and also as to business agent Garvey's authority, we think there is sufficient evidence in the record to uphold the verdict of the jury in behalf of plaintiff.

On the question of the rules and customs promulgated by the union, witness Michael McCarthy testified that Garvey was the business agent of the union and made his report to the union at its meetings and that there was a rule of the union to the effect that the employers, including St. Louis Roofing Company, had to do their own work and were not allowed to subcontract it out, and the St. Louis Roofing Company could not under the rules of the organization subcontract any part of its work to any man, and no union man is allowed to take a subcontract.

As heretofore stated the record is substantially the same as far as plaintiff's evidence is concerned as presented to this court in the injunction suit between the same parties, being the case of Clarkson v. Laiblan et al., 178 Mo. App.—. In that case Judge NORTONI, l. c. 715, says:

"And it appears clear enough that Garvey's threats, communicated first to the foreman and then to the manager of plaintiff's employer, caused him to lose his position as a foreman of the gang and afterwards occasioned the cancellation of his several contracts. Besides the testimony of the manager of the St. Louis Roofing Company that he cancelled plaintiff's contracts in order to obviate the trouble and loss which would be entailed as a result of Garvey's "pulling off his men," or ordering a strike, plaintiff testified: "Mr. Holland told me that they was too busy to have any trouble

anɖ he says, 'I will have to take them contracts away from you.'"

Further on page 716 the opinion says:

"Here it appears, and this too without contradiction, that Garvey represented the other defendants, all of whom are officers of Local Union No. 1, in threatening to pull off the union men employed by plaintiff's employers, the St. Louis Roofing Company, unless it terminated all beneficial business relations with plaintiff. The evidence is abundant that Garvey was acting within the scope of his authority as business agent of the union and carrying out both the letter and spirit of its rules and regulations in so doing. * * *

"Here, though the organization of the union and the membership therein were entirely proper and lawful, the end sought to be achieved in coercing plaintiff's employer to discharge him and to terminate and refuse further beneficial business intercourse with him was unlawful. Therefore the confederation being present a conspiracy against the rights of plaintiff appears well established."

On page 717 it is further said:

"The evidence reveals that the rules and regulations of the union, with which all defendants were affiliated and in which they occupied the several offices, forbade the employment of non-union workmen either before, with or to follow union workmen, unless specially authorized. Moreover, it appears to be the duty of the business agent, defendant Garvey, to proceed, as the representative of the union and its members to enforce the regulations in respect of such matters. This being true, it is entirely clear that, though Garvey was the only one of the defendants actively pursuing the plaintiff and coercing his employer, he did so at the behest of all under the established regulations and customs of the union.

"It seems to be tacitly conceded in the brief that a case is made against Garvey, but it is argued that the evidence fails to show that he was authorized to call a

strike or "pull off the men" as he threatened. It appears plaintiff had been a member of the union theretofore and that Mr. Holland, Manager of the St. Louis Roofing Company, had employed its members for years. Both of these witnesses testified that Garvey possessed authority in this behalf, and indeed, the entire evidence affords a strong inference to that effect."

The defendants contend that they knew nothing about Garvey's conversation with the manager of the St. Louis Roofing Company, and that Garvey had no authority as the business agent to make a threat that the men would strike. And further, that there was a failure of proof in the case to support the allegation of the petition to the effect that the defendants notified plaintiff and the St. Louis Roofing Company that unless the contract under which plaintiff was working, and all other contracts between the St. Louis Roofing Company and the plaintiff, were cancelled and annulled the roofers union would cause and require the members of the union to quit work and to refuse to work for the St. Louis Roofing Company until such contracts were annulled.

While it is true that there is no specific by-law of the union which conferred authority upon Garvey, the business agent, to order a strike, it does appear clearly from the evidence that it was his duty to visit the union shops at regular intervals to see that none but union men were employed, and according to the testimony of Mr. Laiblan, the president of the union, he, Garvey, was to use his own judgment. It appeared that sometimes he reported his action to the union, and sometimes he did not. Garvey was the only business agent of the union and had acted as such for many years, and he testified that he reported to the union that he caught Clarkson doing St. Louis Roofing Company work and had taken the matter up with Mr. Holland, the manager, and had adjusted the matter. While the evidence does not show what specific action the union took on the report, there is nothing in the evidence showing that Clarkson's acts were ever disapproved. In

addition, the testimony of Clarkson himself and also of Mr. Holland, the Manager of the St. Louis Roofing Company, was to the effect that Garvey had authority as the business agent to call a strike. It is plain from the evidence that Garvey notified both the plaintiff and the St. Louis Roofing Company that unless the roofing company cancelled its contracts with Clarkson, that he would require the members of the union to quit work and to refuse to further work for the St. Louis Roofing Company until such contracts were annulled. As the evidence tended to show that these acts on the part of Garvey were within the scope of his authority as business agent of the union the officers and members of the union, being these defendants, were bound thereby.

It follows from this that there was evidence in the case tending to support the allegations of the petition, and that the court did not err in failing to give defendants' peremptory instruction to the effect that plaintiff could not recover.

Defendants' objection to the main instruction given on behalf of the plaintiff is to the effect that there is no evidence in the case that Garvey as business agent had any authority to threaten to call a strike of the employees of the roofing company, and to threaten to interfere with the business of the St. Louis Roofing Company and to cause it loss unless it ceased all contractual relations with the plaintiff, and further that the instruction is erroneous because there is no evidence in the case that Garvey threatened to cause the St. Louis Roofing Company loss unless it ceased its contractual relations with the plaintiff.

What has been heretofore said answers this contention of appellants. There being evidence of Garvey's authority to enforce the rules of the roofers union, if in exercising that authority he threatened to call a strike in the event the roofing company did not cancel and annul Clarkson's contracts, defendants would be liable for his acts, although they did not specifically give him any authority to threaten anyone.

We do not think the instruction as given was erroneous, and find that there was sufficient evidence in the record to support it.

Complaint is made of the second instruction given to the jury on the ground that there is no evidence upon which to bottom that part of the instruction which told the jurors that if defendants ratified the acts of Garvey they must find a verdict for the plaintiff. The part of the instruction complained against is as follows: "And you further find that in making such threats of a strike on the part of said employees (if you find he made such threats) Garvey was acting within the scope of the authority conferred upon him by local union No. 1 as its business agent, or that his acts were subsequently ratified by the defendants, then you must find a verdict in favor of plaintiff, etc."

While there is considerable testimony to the effect that none of the defendants knew anything about Garvey's interview with Mr. Holland, the Manager of the St. Louis Roofing Company, on March 20, 1909; the evidence shows, through the testimony of Patrick Garvey, that he did report to the union the fact that he caught Clarkson doing St. Louis Roofing Company work and that he took the matter up with Mr. Holland, and that Mr. Holland said that things would be made satisfacotry.

It is true that the evidence does not show what action the members of the union took on the report, but it does appear from Garvey's testimony that he was never advised by any of the officers of the union after the report was made that they disapproved of what he had done in the matter. We think this was sufficient evidence to justify the language of the instruction, and that from that evidence the inference might be drawn that the union ratified Garvey's acts.

Error is also assigned because of the refusal of the court to give three instructions asked on behalf of the defendants. The first of these instructions told the jury that there was no evidence tending to prove that

the defendants were guilty of any malicious act against the plaintiff. It was not error to refuse this instruction, for if Garvey had authority to act for the union the defendants were liable for his acts and the manner in which he performed them.

The second instruction which was refused, told the jury that the members of a voluntary association are not liable for the wrongful acts of an agent of said association, unless they had knowledge of such wrongful acts and either directed him in the performance of the same or approved of their commission. We do not consider this a correct proposition of law, for we see no reason why a voluntary association should not be liable for the wrongful acts of an agent in the event he had authority to act and did so within the scope of his said authority; and in the event he chose to perform his duties in an unlawful manner, we think the members of a voluntary association would be liable for his acts.

The third refused instruction was a peremptory instruction to find for the defendants, and from what has been heretofore said it was not improper to refuse this character of instruction.

Defendants make the further point that the punitive damages assessed are excessive. The verdict was for the sum of $1200 punitive damages and $55 compensatory damages. It appeared that this cause has been before three juries and that each of the juries rendered a verdict in behalf of the plaintiff, and in each case for damages in sums larger than was given in the present verdict. The acts of the defendants, through Garvey, the business agent, were necessarily humiliating and annoying to the plaintiff. There are eight defendants to bear the burden of this verdict. We do not think that the verdict under the circumstances is excessive.

We rule that the case was fairly tried under proper instructions. Finding no reversible error in the record the Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of Biggs, C., is adopted as the opinion of the court. The judgment of the Circuit Court is accordingly affirmed. *Reynolds, P. J., Allen* and *Becker, JJ.,* concur.